UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THERESA BEVILLE, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Case No. 2:05-cv-01381-HGD |
| ) | |
| JOHN GIBBS and BRUNO'S, INC. ) | |
| d/b/a FOOD FAIR, ) | |
| ) | |
| Defendants ) | |

**MEMORANDUM OPINION**

The above-entitled civil action is before the court on the motions for summary judgment filed by defendants, John Gibbs and Bruno's, Inc. d/b/a Food Fair. (Docs. #11 & #15, respectively). This matter is before the undersigned United States Magistrate Judge based on the consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73, Fed.R.Civ.P. Plaintiff has responded to each motion, and the motions are ready for disposition.

SUMMARY JUDGMENT STANDARD

This matter is considered by the court pursuant to the provisions of Rule 56, Fed. R. Civ. P. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). Thus, summary judgment is appropriate where the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law governing the action determines whether an element is essential. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleading, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *see Brown v. Crawford*, 906 F.2d 667, 669 (11th Cir. 1990), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991).

   This circuit clearly holds that summary judgment should be entered when the moving party has sustained its burden of showing the absence of a genuine issue of material fact when all the evidence is viewed in the light most favorable to the non-moving party, *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983); *see also, Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in

support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in her favor. *Id.* at 255, 106 S.Ct. at 2514, *citing Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970). It is, therefore, under this standard that the court must determine whether the plaintiff can meet her burden of coming forward with sufficient evidence as to each material element of her claims sufficient to permit a reasonable jury to find in her favor.

## FACTUAL BACKGROUND

For purposes of summary judgment, the evidence is viewed in the light most favorable to the non-moving party unless doing so is clearly unreasonable given the evidence submitted. Thus, for purposes of each defendant's motion for summary judgment, the evidence will be viewed in the light most favorable to the plaintiff, Theresa Beville.

On July 4, 2003, John Gibbs was employed as a police officer for the City of Birmingham, Alabama. On that date, he was working an off-duty job as a security guard at the Food Fair Store at the Westgate Shopping Center. Ms. Beville was a customer who went to this store on that day with a friend, Isie Nelson, to buy some items for a meal. (Beville Depo. at 81-84). She denies having consumed any alcohol

or drugs prior to the time she went to the store, which was approximately 8:00 p.m. (*Id.* at 85-86).

When plaintiff and Ms. Nelson went in the store, they got a shopping cart and began to shop, going up and down the aisles of the store. After reaching the third aisle, Nelson asked Beville if Gibbs, who was in uniform, was following them. (*Id.* at 88-89). At this point, Beville testified she decided to cut her shopping trip short. She got in line to pay for the items that she had obtained up to that point. She directed Ms. Nelson to get her some beer while she waited in line. When she got in line, Officer Gibbs came and stood right next to her but was looking in the opposite direction. (*Id.* at 90-92).

Beville testified that at that time she spoke to Officer Beville, telling him that he did not have to follow her all over the shop because she had been shopping in this store for over ten years with no problems. According to Ms. Beville, Gibbs told her that he was not watching her, he was watching a white man in an overcoat. (*Id.* at 93-94).

Beville states that she then turned her attention back to the cashier. At that time, Officer Beville began shouting at her for her to leave the store. She stated that she did not move at first because she did not realize he was talking to her. She further testified that about the time she realized he was talking to her, she decided to leave the store. She alleges that she walked out of the store when Gibbs made a motion like he was about to grab her. (*Id.* at 94-95).

Plaintiff states that she gave her friend time to come back to the front of the store and then asked Officer Gibbs if she could come back inside to sign a check to pay for the goods she had collected before getting in line. (*Id.* at 96). She gave the cashier her signed check and her driver's license and got ready to walk out of the store. (*Id.* at 97). While doing this, she commented to the cashier that she didn't know what Gibbs' problem was but that she and her friend just needed to get out of the store so she could enjoy the Fourth of July holiday. (*Id.* at 105).

According to Beville, she had to pass by Officer Gibbs to leave the store and, when she did, she was looking in his direction but said nothing to him. She states that, as she walked by the officer, he lunged at her, grabbed an arm and twisted it. (*Id.* at 97). Beville testified that she pulled away from him, and he then announced that she was under arrest. (*Id.* at 98).

Beville states that she did not raise her voice, curse, swing, or lunge at the officer during this encounter. (*Id*. at 99-101). After she pulled away from him, Beville states that she asked why she was being arrested and Gibbs sprayed her with pepper mace, pulled her arms behind her, slammed her on the floor and put handcuffs on her. (*Id.* at 101). According to Beville, she did not hear any Food Fair employee say anything to her immediately before or after her arrest. She specifically denied hearing any Food Fair employee instructing Officer Gibbs to arrest her. (*Id.* at 106).

#### DISCUSSION

It should come as no surprise that Officer Gibbs gives an entirely different account of what occurred between himself and Ms. Beville on July 4, 2003. However, as noted above, for summary judgment purposes, her version of the disputed facts are the ones considered by the court.

Defendant, John Gibbs, claims he is entitled to qualified immunity from suit in this case. Defendant, Bruno's, claims that it is entitled to summary judgment because it has no *respondeat superior* liability due to the fact that Officer Gibbs was acting as a City of Birmingham police officer at the time he arrested Ms. Beville and not as a security guard for the Food Fair store.

### Bruno's Inc. d/b/a Food Fair

Plaintiff asserts that Gibbs was acting simultaneously as a police officer for the City of Birmingham and as a security guard in the employ of Bruno's at the time of this incident. This simply is not the law in Alabama. The Alabama Supreme Court has held that when an off-duty police officer witnesses an offense for which the perpetrator is arrested, the officer's status changes, and he is then acting in his capacity as a police officer and not his capacity as a security guard. *Whitely v. Food Giant, Inc.*, 721 So.2d 207, 209 (Ala.Civ.App. 1998), *citing Dinmark v. Farrier*, 510 So.2d 819 (Ala. 1987) (holding that an off-duty police officer "moonlighting" as a security guard at a grocery store was acting in his capacity as a police officer and not in his capacity as a security guard when he arrested the plaintiff for disorderly

conduct after witnessing the plaintiff's unruly behavior); *see also Ex parte Kennedy*, 486 So.2d 493, 495 (Ala. 1986) (holding that an off-duty police officer who was working as an exterminator and noticed three plants that appeared to be marijuana "stepped out of his exterminator role and became a government agent" when he examined the plants and took a leaf for verification); *Perry v. Greyhound Bus Lines*, 491 So.2d 926 (Ala. 1986) (holding that status of off-duty police officers "moonlighting" as security guards was changed to that of police officers after witnessing a crime); *Driskill v. State*, 376 So.2d 678, 679 (Ala. 1979) (holding that an off-duty police officer employed as a security guard for a high school football game was acting in his capacity as a police officer, not in his capacity as a security guard, when he attempted to remove a student from the stadium and that student physically resisted); *Robinson v. State*, 361 So.2d 1113, 1114 (Ala. 1978) (holding that an off-duty police officer "moonlighting" as a security guard was not transformed from a security guard to a police officer when he received a report of a fight, because he had not witnessed any crime); *Hutto v. State*, 53 Ala.App. 685, 689, 304 So.2d 29, 33 (Ala.Crim.App.), *cert. denied*, 293 Ala. 758, 304 So.2d 33 (Ala. 1974) (holding that an off-duty police officer employed as a security guard for a high school football game was acting in his capacity as a police officer, not in his capacity as a security guard, when he was assaulted after he had witnessed the appellant, a minor, in possession of beer).

After referencing the cases cited above, the Court in *Johnson v. State* stated:

> The clear import of these cases is that when an off-duty police officer witnesses a criminal offense or suspects criminal activity, the officer's status changes and, from that point on, he is considered to be acting in his capacity as a police officer and not in his capacity as a private citizen, i.e., he is considered to be "on duty."

*Johnson v. State*, 823 So.2d 1, 43 (Ala.Crim.App. 2001).

Thus, Gibbs was clearly acting in his capacity as a police officer when he arrested plaintiff and not as an employee of Bruno's. Therefore, the motion for summary judgment by Bruno's, Inc. d/b/a Food Fair, is due to be granted.

**John Gibbs**

Gibbs asserts that he is entitled to qualified immunity for his actions in arresting plaintiff. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).

To receive qualified immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Id.* (internal quotation marks omitted). Here, it is clear that Officer Gibbs was acting within the course and scope of his discretionary authority when he charged and arrested Beville. "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.*

The Supreme Court has set forth a two-part test for the qualified immunity analysis. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156. However, "[i]f a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" *Vineyard*, 311 F.3d at 1346 (quoting *Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156). Thus, it is necessary to analyze also whether Officer Gibbs' alleged conduct violated Beville's constitutional rights.

There is no question that an arrest without probable cause to believe a crime has been committed violates the Fourth Amendment. *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990); *Herren v. Bowyer*, 850 F.2d 1543 (11th Cir. 1988). An arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest. *See Lee v. Ferraro*, 284 F.3d 1188,1194-95 (11th Cir. 2002); *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996); *Von Stein v. Brescher*, 904 F.2d at 578. "For probable cause to exist, . . . an arrest must be objectively reasonable based on the totality of the circumstances." *Lee*, 284 F.3d at 1195. "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) (internal quotation marks omitted). "Although probable cause requires more than suspicion, it does not require convincing proof, and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction." *Lee*, 284 F.3d at 1195 (internal quotation marks and citations omitted) (alteration in original).

To receive qualified immunity protection, "an officer need not have actual probable cause but only 'arguable probable cause.'" *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997). Because only arguable probable cause is needed, "the inquiry is not whether probable cause actually existed, but instead whether an officer

reasonably could have believed that probable cause existed, in light of the information the officer possessed." *Id.* "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (internal quotation marks omitted).

Because of the purpose served by the doctrine of qualified immunity, a valid defense based upon it must be recognized as soon as possible, preferably at the motion to dismiss or summary judgment stage of the litigation. *See Saucier*, 533 U.S. at 199, 121 S.Ct. at 2155-56 ("Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive."); *Hunter v. Bryant*, 502 U.S. at 227, 112 S.Ct. at 536 ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation."); *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (stating that qualified immunity "is an entitlement not to stand trial or face the other burdens of litigation").

Where it is not evident from the allegations of the complaint alone that the defendants are entitled to qualified immunity, the case will proceed to the summary judgment stage, the most typical juncture at which defendants entitled to qualified immunity are released from the threat of liability and the burden of further litigation. *See generally Behrens v. Pelletier*, 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773

(1996) (recognizing right to interlocutory appeal of denial of motion to dismiss and denial of summary judgment on qualified immunity grounds).  Even at the summary judgment stage, not all defendants entitled to the protection of the qualified immunity defense will get it.  The ones who should be given that protection at the summary judgment stage are those who establish that there is no genuine issue of material fact preventing them from being entitled to qualified immunity.  That will include defendants in a case where there is some dispute about the facts, but even viewing the evidence most favorably to plaintiff, the law applicable to that set of facts was not already clearly enough settled to make the defendant's conduct clearly unlawful.  However, if the evidence at the summary judgment stage, viewed in the light most favorable to the plaintiff, shows there are facts that are inconsistent with qualified immunity being granted, the case and the qualified immunity issue along with it will proceed to trial.

Defendants who are not successful with their qualified immunity defense before trial can re-assert it at the end of the plaintiff's case in a Rule 50(a) motion. Rule 50(a), Fed.R.Civ.P.; *Cottrell v. Caldwell*, 85 F.3d 1480, 1488 (11th Cir. 1996). That type of motion will sometimes be denied because the same evidence that led to the denial of the summary judgment motion usually will be included in the evidence presented during the plaintiff's case, although sometimes evidence that is considered at the summary judgment stage may turn out not to be admissible at trial.  *See generally Wright v. Southland Corp.*, 187 F.3d 1287, 1304 n.21 (11th Cir. 1999);

*McMillian v. Johnson*, 88 F.3d 1554 (11th Cir. 1996).  Where there is no change in the evidence, the same evidentiary dispute that got the plaintiff past a summary judgment motion asserting the qualified immunity defense will usually get that plaintiff past a Rule 50(a) motion asserting the defense, although the district court is free to change its mind.  *See Abel v. Dubberly*, 210 F.3d 1334 (11th Cir. 2000) (collecting cases).

It is important to recognize, however, that a defendant is entitled to have any evidentiary disputes upon which the qualified immunity defense turns decided by the jury so that the court can apply the jury's factual determinations to the law and enter a post-trial decision on the defense.  When the case goes to trial, the jury itself decides the issues of historical fact that are determinative of the qualified immunity defense, but the jury does not apply the law relating to qualified immunity to those historical facts it finds; that is the court's duty.  *Stone v. Peacock*, 968 F.2d 1163, 1166 (11th Cir. 1992) ("The law is now clear, however, that the defense of qualified immunity should be decided by the court, and should not be submitted for decision by the jury."); *Ansley v. Heinrich*, 925 F.2d 1339, 1348 (11th Cir. 1991) ("[O]nce the defense of qualified immunity has been denied pretrial due to disputed issues of material facts, the jury should determine the factual issues without any mention of qualified immunity.").

A tool used to apportion the jury and court functions relating to qualified immunity issues in cases that go to trial is special interrogatories to the jury.

"Qualified immunity is a legal issue to be decided by the court, and the jury interrogatories should not even mention the term. Instead, the jury interrogatories should be restricted to the who-what-when-where-why type of historical fact issues." *Cottrell*, 85 F.3d at 1488 (internal citations omitted). In a proper case, the use of special jury interrogatories going to the qualified immunity defense is not discretionary with the court. As the Eleventh Circuit said in *Cottrell*, "[b]ecause a public official who is put to trial is entitled to have the true facts underlying his qualified immunity defense decided, a timely request for jury interrogatories directed toward such factual issues should be granted." *Id.* at 1487.

Viewing the facts in the light most favorable to the plaintiff, Officer Gibbs did not have even arguable probable cause to arrest Beville. As noted above, Gibbs vigorously disputes Beville's version of events. Nonetheless, Gibbs' motion for summary judgment predicated on qualified immunity is due to be denied at this time. However, this is clearly a proper case for the use of special jury interrogatories. If requested by counsel for Gibbs, said interrogatories will be presented to the jury during the trial of this case and the issue of qualified immunity will be revisited by the court thereafter, if necessary.

## CONCLUSION

Based on the foregoing, the motion for summary judgment filed by defendant, Bruno's Inc., d/b/a Food Fair, is due to be granted. The motion for summary

judgment on the basis of qualified immunity filed by defendant John Gibbs is due to be denied because of the existence of genuine issues of material fact. A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

    DONE this 7th day of May, 2007.

/s/ Harwell G. Davis

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE
